UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————————

MARYTHERESE MILLER,

                                        Plaintiff,


               - against -
                                                          14-CV-5026 (CS)

                                                          **OPINION & ORDER**

JOHN MCHUGH, SECRETARY,
DEPARTMENT OF THE ARMY,
United States of America,

                                        Defendant.


——————————————————————————————


<u>Appearances</u>:

Peter J. Cresci
Cresci Law Firm, LLC
Bayonne, New Jersey
*Counsel for Plaintiff*

Natasha L. Waglow
Assistant United States Attorney
New York, New York
*Counsel for Defendant*

<u>Seibel, J.</u>

        Before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended

Complaint.  (Doc. 15.)  For the reasons stated below, Defendant's Motion is GRANTED.

## I.  **Background**

For purposes of this Motion, the Court accepts as true the facts, but not the conclusions, alleged by Plaintiff in the Second Amended Complaint ("SAC").  (Doc. 12.)

Plaintiff Marytherese Miller was previously employed as a legal technician at the Department of the Army ("DA").[1]  (SAC ¶ 7.)  In this role, she was responsible for providing administrative and technical support for cadet misconduct and honor hearings, as well as for recording and transcribing those hearings.  (*Id.* ¶ 10.)  Plaintiff suffers from medical impairment of her left knee, as well as from Reflex Sympathetic Dystrophy ("RSD"); these conditions impede Plaintiff's ability to walk, stand and climb stairs.  (*Id.* ¶ 22.)  Although "contested" honor hearings were historically held on the fourth floor of Nininger Hall – which lacked an elevator – Plaintiff had previously requested and been granted both informal and formal accommodations. (*Id.* ¶¶ 11-12.)  Specifically, Defendant granted Plaintiff's request that she be allowed to cover contested honor hearings in the readily accessible Office of the Staff Judge Advocate ("OSJA") courtroom, rather than on the fourth floor of Nininger Hall.  (*Id.* Ex. A, at 3.)[2]  In January 2010, however, a "mission requirement" prevented contested honor hearings from being held in the OSJA courtroom, and as a result, her accommodation needed to be modified.  (*Id.* at 4.)  Plaintiff was told that her hearings would be held in the Red Reeder Room of Washington Hall, a building with an elevator.  (*Id.*)  Defendant further offered Plaintiff a parking pass at Washington Hall and indicated that she would not need to carry any heavy recording equipment, as the OSJA would

---

[1] The SAC classifies Miller as a "DOD employee" – namely, one employed by the Department of Defense – as does Plaintiff's Response to Defendant's Motion to Dismiss Under 12(b)(6) (("Plaintiff's Opp. Mem."), (Doc. 17), at 8.) Yet she brings this lawsuit against the Secretary of the Army, not the Secretary of Defense, and the decision of the Merit Systems Protection Board ("MSPB") that she seeks to reinstate indicates that Plaintiff was employed by the DA.  (SAC Ex. A, at 1.)  In any event, the distinction does not affect the outcome here.

[2] The Court is citing to the February 12, 2013 MSPB initial decision, which is permissible because Plaintiff incorporated it by reference into the SAC, and the Court is confining itself to facts Plaintiff did not, and does not, contest.

ensure such equipment was already in the Red Reeder Room on days of scheduled hearings. (*Id.*) After Plaintiff encountered difficulties navigating the ramp at the entrance to Washington Hall, Defendant offered to purchase a mobility scooter for Plaintiff's use, even noting that on inclement weather days, Plaintiff would not be expected to attend honor hearings. (*Id.* at 4-5.) Plaintiff declined Defendant's offer. (*Id.* at 5.) After approximately two months, Defendant requested that Plaintiff undergo a fitness for duty examination ("FFDE"), after which Defendant concluded that she would be unable to perform her duties as a Legal Technician due to her decision to refuse the alternative accommodation. (*Id.* at 5-6.) Defendant subsequently offered Plaintiff a legal assistant position, with pay retention, which would have been within her medical restrictions, but she chose not to accept the job. (*Id.* at 6.) On September 7, 2011, Plaintiff's supervisor recommended her termination based on Plaintiff's inability to perform her job and decision not to accept an alternative position, and the termination was made final on January 19, 2012. (*Id.*) Plaintiff appealed the decision to the MSPB field office in New York, which reinstated Plaintiff on February 12, 2013 after an on-the-record, formal hearing. (SAC ¶¶ 18-19; *see id.* Ex. A.) Defendant then appealed this decision to the MSPB in Washington, D.C., which overturned the initial finding and terminated Plaintiff in June 2014. (*Id.* ¶ 19; *see id.* Ex. B.)

Plaintiff filed the original complaint in this case on July 3, 2014, (Doc. 1), and the First Amended Complaint ("FAC") on November 11, 2014, (Doc. 3). This Court held its first pre-motion conference between the parties on February 26, 2015 in advance of Defendant's anticipated motion to dismiss. After the Court instructed Plaintiff to file a further amended complaint, Plaintiff filed the instant SAC on March 23, 2015, (Doc. 12), alleging a disability discrimination claim under the Rehabilitation Act and a claim for retaliation, which is not

specified but understood to be brought under the Rehabilitation Act.[3]  Defendant has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   <u>Legal Standards</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

---

[3] Plaintiff styles her case as an appeal from the MSPB decision.  (SAC ¶ 2.)  Because her claims are of discrimination, they are considered *de novo* in U.S. District Court like any other discrimination case, *see* 5 U.S.C. § 7703(c); *Kloeckner v. Solis*, 133 S. Ct. 596, 603-04 (2012), and like any other discrimination case are subject to a motion to dismiss.  Plaintiff does not allege or argue that the MSPB decision is arbitrary or otherwise improper under the standards set forth in 5 U.S.C. § 7703(c) for review of MSPB decisions that do not involve alleged discrimination.

requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).[4]

> When deciding a motion to dismiss, the court is entitled to consider:
>
> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation

marks omitted); *cf. Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)

("Where plaintiff has actual notice of all the information in the movant's papers and has relied

upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6)

motion into one under Rule 56 is largely dissipated.").

Plaintiff attached to the SAC both the initial MSPB decision, (SAC Ex. A), and the final

MSPB decision, (*id.* Ex. B), which were incorporated by reference into the SAC and which I

consider to the extent undisputed.

## III.   <u>Discussion</u>

Plaintiff asserts two claims under the Rehabilitation Act, 29 U.S.C. § 701, which governs

disability discrimination claims by federal employees, *id.* § 794(a).  The first is a hodgepodge but

---

[4] Plaintiff refers to the "no set of facts" standard originating in *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957). (Plaintiff's Opp. Mem. 3.)  The Supreme Court in 2007 ruled that that standard had "earned its retirement" and "is best forgotten."  *Twombly*, 550 U.S. at 563.  Counsel should not be citing it almost nine years later.

seems to assert hostile work environment, failure to accommodate, and discriminatory

termination, and the second is for retaliation.

    A.  <u>Hostile Work Environment</u>

    Plaintiff argues that Defendant discriminated against her by creating a hostile work

environment, and alleges that "supervising employees harassed and embarrassed Plaintiff in the

company of her co-workers as a result of [her request for accommodation.]" (SAC ¶ 29.) In

order to establish a claim for hostile work environment under the Rehabilitation Act, a plaintiff

must plausibly allege "(1) a workplace that is so severely permeated with discriminatory

intimidation, ridicule, and insult that the terms and conditions of her employment were thereby

altered and (2) a specific basis for imputing the challenged conduct to the employer." *Wesley-

Dickson v. Warwick Valley Cent. Sch. Dist.*, 586 F. App'x 739, 745 (2d Cir. 2014) (summary

order) (internal quotation marks and citations omitted).[5] A plaintiff must show "either that a

single incident was extraordinarily severe, or that a series of incidents were sufficiently

continuous and concerted to have altered the conditions of her working environment."

*Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013) (internal quotation marks

omitted). Additionally, "it is axiomatic that . . . a plaintiff must link the hostile conduct to her

protected class." *Sosa v. N.Y. State Div. of Human Rights*, No. 11-CV-5155, 2015 WL 5191205,

at *12 (E.D.N.Y. Sept. 4, 2015) (internal quotation marks omitted). In determining whether the

threshold has been met, the court's inquiry should focus on "the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance."

---

[5] *See* 29 U.S.C. § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section [of the Rehabilitation Act] shall be the standards applied under . . . the Americans with Disabilities Act . . . ."); *Stone v. City of Mount Vernon*, 118 F.3d 92, 96 (1997) ("The terms common to both regulatory schemes are to be interpreted in the same way.").

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The Second Circuit has suggested that the standard for establishing a hostile work environment remains high. *See Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004).

As Defendant notes, Plaintiff has failed to "provide any details, incidents, or the identity of individuals contributing to the alleged hostile work environment." (Defendant's Mem. 10.)[6] Although the SAC asserts that Defendant's employees "harassed and embarrassed Plaintiff," (SAC ¶ 29), this allegation is entirely conclusory. Plaintiff has provided no information describing how or when DA employees treated her in this manner, nor has she specified who did so. In fact, the record instead suggests that the DA made several attempts to work with Plaintiff by accommodating the location of her assigned hearings, granting her a parking permit, offering her the use of a mobility scooter, making clear she would not be expected to attend hearings on days with inclement weather, and offering her a different position. (*Id.* Ex. A, at 4-6.) It is devoid of facts plausibly suggesting any hostility toward her, let alone severe or pervasive hostility based on her disability.

Plaintiff argues that she was "coerc[ed] . . . under duress[] to navigate an incline that Defendant . . . knew was not ADA Compliant" and, thus, was subject to a "hostile and abusive work environment," (Plaintiff's Opp. Mem. 9), but this allegation falls far short of what Plaintiff must demonstrate. Defendant rightly notes that the SAC mentions the ramp's "steep incline" but does not suggest that Plaintiff was coerced in any way to climb the ramp. (*See* Defendant's Reply Mem. 2;[7] SAC ¶ 16.) In fact, by Plaintiff's own account, it was the failure of the "dry

---

[6] "Defendant's Mem." refers to Memorandum of Law of Defendant John McHugh, Secretary of the Army, United States of America in Support of his Motion to Dismiss the Second Amended Complaint. (Doc. 16.)

[7] "Defendant's Reply Mem." refers to Reply Memorandum of Law of Defendant John McHugh, Secretary of the Army, United States of America in Further Support of his Motion to Dismiss the Second Amended Complaint. (Doc. 18.)

run" on the ramp that prompted Defendant to offer her the scooter.  (SAC Ex. A, at 4.)   This incident does not come close to plausibly suggesting severe or pervasive discrimination, ridicule, insult or intimidation.  At the pre-motion conference on February 26, 2015, the Court noted that the original Complaint lacked any facts to suggest how a hostile work environment arose, and the Court finds the SAC similarly lacking.  Because of the absence of any facts, statements or interactions that would allow the Court to plausibly infer that a hostile work environment existed, Plaintiff has failed to make out a claim on these grounds and the hostile work environment claim is dismissed.

### B.  Failure to Reasonably Accommodate

Plaintiff also argues that Defendant failed to make reasonable accommodations that would have permitted her to continue her employment.  The SAC asserts that Plaintiff "requested temporary, reasonable, and minimal accommodations upon returning to work," (*id.* ¶ 29), and alleges that the DA "failed to establish undue hardship . . . that would ensue continuing the accommodation which permitted her to record contested hearings in the OSJA courtroom, rather than Nininger Hall or Washington Hall," (*Id.* ¶ 24).  As a result, Plaintiff writes that Defendant "wrongly discriminated against [her] because of her disability and recovery."  (*Id.* ¶ 30.)

As with the hostile work environment claim, failure to accommodate claims brought under the Rehabilitation Act are considered under the same framework and standards applied under the ADA.  *See Stone*, 118 F.3d at 96.  A plaintiff makes out a *prima facie* case of disability discrimination arising from a failure to accommodate by establishing that:  (1) he is a person with a disability under the meaning of the ADA, (2) his employer had notice of his disability, (3) he could perform the essential functions of his job with reasonable accommodation, and (4) his employer refused to make the reasonable accommodation.  *See id.* at 96-97.  In determining

8

whether an employer has failed to accommodate the employee, the ADA "'envisions an "interactive process" by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated.'" *Jackson v. Elmhurst Hosp. Ctr.*, No. 10-CV-5248, 2012 WL 868965, at *5 (E.D.N.Y. Mar. 14, 2012) (quoting *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000)).  Where "the employee causes the interactive process to collapse, an employer will not be liable." *Jackson*, 2012 WL 868965, at *5-6 (denying claim where defendant "properly pursued plaintiff's accommodation request until plaintiff herself abandoned it") (internal quotation marks omitted).  Relatedly, it is well-established that the employer is not required to provide every accommodation the disabled employee may request, so long as the accommodation offered is a reasonable one. *See Fink v. N.Y.C. Dep't of Pers.*, 53 F.3d 565, 567 (2d Cir. 1995).

For purposes of its motion to dismiss, Defendant accepts that Plaintiff has adequately pleaded the first three elements of the claim, and argues only that Plaintiff failed to plausibly allege the fourth element – namely, that the DA failed to make a reasonable accommodation. (Defendant's Mem. 12.)  This Court agrees.  The SAC asserts that Defendant "failed to demonstrate that the provision of a scooter would have been a reasonable and effective accommodation," (SAC ¶ 17), but it is Plaintiff's burden to plausibly allege why or how the scooter, or any of the other accommodations offered by Defendant, were not reasonable accommodations.  Plaintiff contends that this question is "an argument for another day," (Plaintiff's Opp. Mem. 10), but in fact Plaintiff was required to at least allege facts supporting a plausible inference that Defendant's proposed alternative was insufficient or ineffective.  It is plain that the accommodation Defendant offered was not the one Plaintiff preferred.  But an employer need not "take account of the disabled individual's preferences in choosing the means

of accommodation." *Fink v. N.Y.C. Dep't of Pers.*, 855 F. Supp. 68, 72 (S.D.N.Y. 1994), *aff'd*,

53 F.3d 565.  Thus the employer need not demonstrate that the employee's requested

accommodation is impractical; rather the employee must plausibly allege that the offered

accommodation was not reasonable.  *See id.*  The Court finds that the SAC has plainly failed to

do so, and accordingly the failure to accommodate claim is dismissed.[8]

    C.  Discriminatory Termination

    Plaintiff also argues that Defendant violated the Rehabilitation Act by wrongfully

discriminating against Plaintiff based on her disability when it terminated her.  (*See* Plaintiff's

Opp. Mem. 11.)  To state such a claim, a plaintiff must plausibly allege that (1) her employer is

subject to the Rehabilitation Act; (2) she was disabled within the meaning of the Act; (3) she was

otherwise qualified to perform the essential functions of the job, with or without reasonable

accommodation; and (4) she suffered an adverse employment action because of her disability.

*Quadir v. N.Y. State Dep't of Labor*, 39 F. Supp. 3d 528, 540 (S.D.N.Y. 2014).  Defendant does

not contest the first three elements for purposes of the instant motion.  But it argues that Plaintiff

has not plausibly alleged that she suffered an adverse employment action because of her

disability.  (Defendants' Mem. 17.)  That element requires a plausible showing of "a causal

connection between [her] disability and termination," and "that [her] disability was the only

reason for the termination."  *Nadel v. Shinseki*, 57 F. Supp. 3d 288, 298 (S.D.N.Y. 2014).

    As pleaded, the SAC puts forth no facts to support Plaintiff's allegation that she was

terminated because of her disability, as opposed to her refusal to accept accommodations that

---

[8] Defendant is also correct that the only accommodation Plaintiff challenges – the provision of the scooter to access Washington Hall – was found in a prior case to be a reasonable accommodation, *see Miller v. McHugh*, 814 F. Supp. 2d 299, 306 n.30, 318 (S.D.N.Y. 2011), and thus Plaintiff is precluded from relitigating that claim here, s*ee Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 472-73 (S.D.N.Y. 2009).

would permit her to do her job.  As with Plaintiff's other claims, mere conclusory statements that

Defendant discriminated against her "because of her disability and recovery," (SAC ¶ 30),

without more, are insufficient to meet the pleading standards required by Fed. R. Civ. P.

12(b)(6).  *See Iqbal*, 556 U.S. at 681 (bare assertions cannot constitute a plausible claim for

relief).  The SAC is devoid of facts from which the Court could plausibly infer that Plaintiff's

termination was based on disability discrimination.  Indeed, the only inference plausibly raised

by the SAC is that Defendant would have been happy to keep Plaintiff on, and because of

Plaintiff's physical limitations, adopted a series of measures throughout her employment in an

attempt to ease the responsibilities associated with the Legal Technician position.  (*See* SAC ¶¶

9, 12-13; *id.* Ex. A, at 4-6.)  It seems plain that Plaintiff preferred other accommodations and

refused Defendant's offers, but as noted above, she was not entitled to her preferred

accommodation, just a reasonable one.  Termination for refusal to accept reasonable

accommodations that would have entitled one to remain employed is not termination for being

disabled.  *See* 29 C.F.R. § 1630.9(d) ("[An] individual [who] rejects a reasonable

accommodation . . . that is necessary to enable the individual to perform the essential functions

of the position held or desired, and cannot, as a result of that rejection, perform the essential

functions of the position . . . will not be considered qualified.").  Accordingly, the discriminatory

termination claim is dismissed.

     D. Retaliation

     Plaintiff's final claim is that she was retaliated against in violation of the Rehabilitation

Act.  (SAC ¶¶ 32-36.)  To plead such a claim, a plaintiff must plausibly allege that "(1) she

engaged in an activity protected by the [Rehabilitation Act]; (2) the employer was aware of this

activity; (3) the employer took an adverse employment action against her; and (4) a causal

connection exists between the alleged adverse action and the protected activity, that is, the employer acted with a retaliatory motive." *Quadir*, 39 F. Supp. 3d at 542 (internal quotation marks omitted) (alteration in original).  In place of direct evidence of retaliatory animus, a causal connection may be established indirectly by showing that the protected activity was followed closely by discriminatory treatment.  *Pierre v. Napolitano*, 958 F. Supp. 2d 461, 482 (S.D.N.Y. 2013).  Where a plaintiff is relying on "temporal proximity as circumstantial evidence of causation," such proximity "must be very close."  *Id.* (internal quotation marks omitted).

Plaintiff's conclusory claim is insufficient for several reasons, most notably her failure to specify the protected activity.  *See Wilson v. Southampton Hosp.*, No. 14-CV-5884, 2015 WL 5124481, at *18 (E.D.N.Y. Aug. 28, 2015).  Plaintiff refers to prior "complain[ts] of equal employment disability discrimination, hostile work environment, [and] reprisal and retaliation in November 2006, May 2007, and July 2007," (SAC ¶ 34), and asserts that she "previously engaged in protected activity in 2009, 2010, 2011, as well as 2012," (*id.* ¶ 32), but as an initial matter, and as Defendant notes, Plaintiff "fails to provide any details or facts" regarding what complaints she made and to whom.  (Defendant's Mem. 18.)  Although the Court is left to speculate based on the facts and allegations pleaded in the SAC, it seems likely that the Plaintiff may be referring to prior complaints and cases she initiated with the Equal Employment Opportunity Commission ("EEOC"), and related depositions in March 2011, which, according to the February 12, 2013 MSPB decision, involved OSJA employees.  (*See* SAC Ex. A at 20.)  But neither the SAC nor the MSPB decision set forth facts or allegations from which the Court could plausibly infer that the DA terminated Plaintiff's employment due to her participation in EEO matters.  Indeed, the MSPB decision found that Plaintiff "failed to prove by preponderant evidence that the agency retaliated against her based on her prior EEO activity."  (*Id.* at 22.)

12

Moreover, the Second Circuit has previously found that "even a four-month interval . . . is insufficient in itself to establish the [necessary] causal connection" and "action taken twenty months after the protected activity suggests, by itself, no causality at all." *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 26 (2d Cir. 2011) (internal quotation marks omitted); *see also Murray v. Visiting Nurse Servs. of N.Y.,* 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation."). Even if Plaintiff's prior requests and complaints were the protected activity she cites, the temporal gap between the conduct and her termination that was initiated in September 2011 is too long to support the required inference.[9] Accordingly, the retaliation claim is dismissed.

## IV.    **Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

---

[9] Indeed, that Defendant offered, in August 2011, to transfer Plaintiff to a different position, with pay retention, (*see* SAC Ex. A, at 6), undercuts any inference that it was looking to fire her in September 2011 because of her participation in protected activity in March 2011.

Plaintiff has made a one-sentence *pro forma* request to amend, (Plaintiff's Opp. Mem.

13), but has not provided a proposed Third Amended Complaint or indicated what facts she

could add that would cure the deficiencies discussed above.  Plaintiff has already amended her

complaint twice, (*see* Docs. 3, 12), and on the second occasion did so with the benefit of

Defendant's pre-motion letter, (*see* Doc. 8), and my observations during the February 26, 2015

conference that the once-amended complaint was entirely lacking in facts to sufficiently support

the requisite plausible inferences.  My law clerk took detailed notes of the conference.  I advised

Plaintiff's counsel, among other things, that conclusory statements that Defendant tried to thwart

Plaintiff's employment were insufficient; there was no explanation for why the accommodation

of a scooter was not reasonable; there were no facts showing what made the work environment

hostile or that those factors were severe or pervasive; the FAC failed to state what

accommodations were requested; the FAC said Plaintiff was harassed but not how; the retaliation

claim did not say what the protected conduct was or when it happened, so a causal connection

could not be inferred; and that it was insufficient to say, without dates or details, that Plaintiff

was retaliated against for protected activity.  I explained that the FAC would be "dismissed in a

heartbeat" and that Plaintiff should file a SAC that provided facts.  Plaintiff then amended again,

(Doc. 12), but, as discussed, again failed to provide the necessary facts to render her conclusions

plausible.  Even now, Plaintiff has not suggested that she possesses any facts that would cure the

deficiencies identified in this opinion.  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs.,*

*LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where

"request gives no clue as to how the complaint's defects would be cured") (internal quotation

marks omitted); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014)

(denying leave to amend was proper where plaintiff had already failed to cure pleading

14

deficiencies and did not specify what new facts it had that would cure those deficiencies) (collecting cases); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45-46 (2d Cir. 2008) (summary order) (district court did not exceed its discretion in not granting leave to amend where plaintiff had already amended complaint once and amendment would have been futile).

Accordingly, leave to amend is denied.

**V.    Conclusion**

For the foregoing reasons, Defendant's Motion is GRANTED.  The Clerk of the Court is respectfully directed to terminate the pending motion, (Doc. 15), and close the case.

**SO ORDERED.**

Dated: February 19, 2016
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

15